17 So.2d 303

**Succession of LOMBARDO.**

No. 37307.

Feb. 7, 1944.

Rehearing Denied March 13, 1944.

See, also, 204 La. 429, 15 So.2d 813.

Arthur J. O'Keefe, Jr., and Leo L. Dubourg, both of New Orleans, for appellant.

Bentley G. Byrnes, of New Orleans, for interveners.

PONDER, Justice.

Raymond Lombardo died in the City of New Orleans on January 1, 1942. His niece, Mrs. Velma Ford Thompson, presented for probate, on January 6, 1942, a nuncupative will by public act, executed by the decedent, Raymond Lombardo, before John D. Lambert, a notary public, dated September 19, 1938. The will was admitted to probate, and Mrs. Thompson was duly qualified as executrix. An inventory of the effects of the succession was made and duly homologated. Thereafter, on January 16, 1942, Mrs. Maud Wendel brought the present proceedings, seeking to have the will made before John D. Lambert, notary public, on September 19, 1938, set aside and vacated and to have a will dated September 28, 1940, made before Richard A. Dowling, notary, probated and executed. She alleges in her petition that she is a legatee under the last named will. Some of the nieces and nephews of the decedent filed a petition in these proceedings, asking for the same relief prayed for by Mrs. Maud Wendel.

Mrs. Velma Ford Thompson answered the proceedings, alleging that the will dated September 28, 1940, made before Richard A. Dowling, is null and void, and the execution of it should be denied for the following reasons, to wit: (a) That the will on its face fails to show that Richard A. Dowling is a commissioned and qualified notary public in and for the Parish of Orleans or the City of New Orleans, or that he resides therein; (b) that the purported will fails to further state that the witnesses named therein have obtained the age of sixteen years complete; (c) that the will was not entirely confected without interruption; (d) that the date at the top of the will was not written on the same date as the will was written; (e) that the purported signature of Raymond Lombardo to the will is a forgery. Mrs. Thompson filed a supplemental answer, alleging that the will should be declared null and void for the additional reasons, to wit: (f) that Richard A. Dowling, the notary before whom the will was made, was a nonresident and was without power or capacity to act as a notary public in the Parish of Orleans; (g) that it does not appear from the recitations in the will that the subscribing witnesses are the same persons named in the body of the will.

Several nieces and nephews on the maternal side of the decedent intervened in the proceedings, praying for the will of September 28, 1940, to be probated and executed and decreed to have superseded the prior will of September 19, 1938, executed before John D. Lambert.

Upon trial, the lower court gave judgment, decreeing that the will dated September 28, 1940, made before Richard A. Dowling, notary, supersedes and revokes the will of September 19, 1938, executed before John D. Lambert, notary, and ordered the will of September 28, 1940, to be filed, registered, probated and executed. All proceedings had under the will of September 19, 1938, inconsistent with the terms of the will of 1940, were annulled, vacated and set aside. Mrs. Velma Ford Thompson has appealed.

In discussing the wills hereafter, for the sake of brevity, we shall refer to the will of September 19, 1938, executed before John D. Lambert, notary, as the first will, and the will made before Richard A. Dowling, notary, on September 28, 1940 as the second will.

The defendant contends that the second will is invalid for the reasons that it does not show on its face that Richard A. Dowling was a duly commissioned and qualified notary at the time it was made before him, in that the words, "I, notary," are used without any further identification; that it fails to state the necessary facts showing the witnesses possessed the legal qualifications to act as witnesses to the will; and that the will was not dated on the same date that it was written.

The second will reads as follows:

"Saturday
"Sept 28th 1940—10am

"On this day at my office 614 Maison Blanche Bldg in New Orleans, I having been requested to do so by him did write as dictated to me Notary the Last Will and Testament of Raymond Lombardo a person in his sound mind which will was dictated to me and written in the presence and hearing of Ruth Briwar, Oscar D. Thomas, John J. Jackson, and George H. Sauton all competent witnesses, all residents of Orleans Parish, and was in the following words to wit:

" 'I revoke all former Wills. This is my last will.

" 'I leave to Mrs. Maud Wendel who was my friend in trouble Two Hundred Dollars

" 'I leave Joseph Jackson negro One Hundred Dollars

" 'I leave one half of all I own at my death to Mrs. Velma Ford, Wife of H. C. Thompson my niece

" 'I leave the balance to my other nieces and nephews and my sisters in equal shares.

" 'I appoint My Niece Mrs. Velma Ford Thompson as executrix, without bond. I name Richard A. Dowling as attorney to settle my estate.'

"I notary then read this will in the presence and hearing of the said witnesses back to the Testator and he persisted in same and that this is his last will and should stand as dictated, and written and read, and which will I have written, all in the presence of the witnesses hereinabove named and the Testator without turning aside for anything else and it was signed in my presence by the Testator and the witnesses and in the presence of each other.
" 'Raymond Lombardo'
"Richard A Dowling
Notary Public
"Witnesses:
" 'Ruth Biewer'
" 'Oscar Thomas'
" 'J. J. Jackson'
" 'Geo. H. Sauton' "

The plaintiffs and interveners take the position that if for any reason the will could not be considered a nuncupative will by public act, it would be a valid nuncupative will under private signature.

The formalities required by the Revised Civil Code for a nuncupative will by public act are enunciated in the following articles:

1578: "The nuncupative testaments by public act must be received by a notary public, in presence of three witnesses residing in the place where the will is executed, or of five witnesses not residing in the place.

"This testament must be dictated by the testator, and written by the notary as it is dictated.

"It must then be read to the testator in presence of the witnesses.

"Express mention is made of the whole, observing that all those formalities must be fulfilled at one time, without interruption, and without turning aside to other acts."

1579: "This testament must be signed by testator; if he declares that he knows not how, or is not able to sign, express mention of his declaration, as also of the cause that hinders him from signing, must be made in the act."

1595: "The formalities, to which testaments are subject by the provisions of the present section, must be observed; otherwise the testaments are null and void."

1647: "Nuncupative testaments received by public acts do not require to be proved, that their execution may be ordered; they are full proof of themselves, unless they are alleged to be forged."

From an examination of the second will on its face, without any evidence to the contrary, it would appear that it does not conflict with any of the aforementioned articles of the Revised Civil Code. However, under the provisions of Article 1647, R. C. C., nuncupative testa-

ments received by public acts require no proof as they are full proof of themselves unless they are forged. Such being the case, a date fixed in the upper corner of the will might not meet the intendment of the law for the reason that it could be easily affixed at a time other than when the testator dictated the will. It certainly would be better practice to embrace the date within the body of the will. Be that as it may, the will is unquestionably valid as a nuncupative will under private signature.

A nuncupative will under private signature must be executed in the presence of five witnesses residing in the place where the will is received or seven witnesses residing out of that place. Article 1581, R. C. C. There were four witnesses to the will. If the will lacks one or more of the formalities required by Article 1578, R. C. C., for a nuncupative will by public act, under the established jurisprudence of this State, the will may be probated and executed as a nuncupative will under private signature, for the reason that the notary would be considered the fifth witness. Succession of Feitel, 187 La. 596, 175 So. 72, and authorities cited therein.

The notary and the four subscribing witnesses testified that the will was dictated by the testator in their presence, and that they resided in the Parish of Orleans. Their testimony is to the effect that the formalities required for a nuncupative will under private signature were complied with. The only evidence tendered to refute or impeach this testimony was some evidence offered to the effect that the notary was not

a resident of the Parish of Orleans. The evidence as a whole shows, in our opinion, that the notary was a resident of the Parish of Orleans at the time the will was made, which will be pointed out later.

The defendant contends that the testator did not sign the second will, and that his signature appearing thereon is a forgery. To support this contention, the defendant relies chiefly on the testimony of an expert witness. The only corroboration offered was the testimony of the defendant and another witness to the effect that the decedent was partially paralyzed and could not have gone to the office of the notary without the assistance of the defendant, Mrs. Thompson.

█ The handwriting expert was of the opinion that the signature was forged. This witness, on cross examination, testified that there was a small element of chance that the decedent did sign the will. Opposed to this testimony was that of the notary and the four subscribing witnesses. They testified positively that the decedent signed the will in their presence. Their testimony in this respect was in no wise impeached or discredited. The notary and one of the subscribing witnesses are prominent attorneys of the New Orleans Bar. There is testimony in the record to the effect that the decedent, although partially paralyzed, was seen on various occasions when he was not assisted by Mrs. Thompson. The preponderance of the evidence proves the decedent signed the will. We cannot disregard the positive testimony of five witnesses by accepting the opinion of the hand-writing expert.

The defendant contends that Richard A. Dowling, the notary to whom the second will was dictated, was not a resident of Orleans Parish at the time the will was executed, September 28, 1940.

On June 22, 1940, Richard A. Dowling, the notary to whom the second will was dictated, filed for record with the clerk of court of St. Bernard Parish a declaration of his intention to change his domicile from the Parish of Orleans to St. Bernard Parish. The evidence shows that no declaration to this effect was filed in the Parish of Orleans. On July 27, 1942, Richard A. Dowling qualified with the chairman of the Democratic Executive Committee as a candidate for nomination for the office of district attorney of the 25th Judicial District, comprising the parishes of St. Bernard and Plaquemines, in the primary to be held on September 8, 1942. He participated in the primary and failed to be nominated. He has maintained for many years a home on Abundance St. in the City of New Orleans where he and his wife have continuously lived. He has consistently occupied a law office in the City of New Orleans. He voted in the primary elections held in the City of New Orleans in 1940. The only evidence in the record that tends to show that he intended to reside in the Parish of St. Bernard is the fact that he rented a room in that parish in October, 1940, wherein he kept only his fishing and hunting clothes. Thereafter, he occupied this room no more than four nights a month.

Articles 38, 41 and 42 of the Revised Civil Code provide:

38: "The domicile of each citizen is in the parish wherein he has his principal establishment.

"The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected."

41: "A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there."

42: "This intention is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove.

"This declaration is made in writing, is signed by the party making it, and registered by the recorder."

From our appreciation of the evidence in this case, Richard A. Dowling and his wife have continued to reside in the City of New Orleans. The fact that Dowling rented a room in the Parish of St. Bernard and occupied it only occasionally is of no moment for the reason that he has actually maintained his permanent establishment in the City of New Orleans where he and his wife have habitually resided.

 Under the settled jurisprudence of this State, it is necessary to record the declaration of the change of domicile in both the parish from which the party is moving and the parish in which his new domicile is to be established. Bloom v. Mundy, La. App., 150 So. 680; Hyde et al. v. Henry, 4 Mart., N.S., 51.

"This principle is further strengthened by the presumption which, in cases of ambiguous domicile, attaches in favor of the continuance of the former domicile." A. B. Ausbachner & Co. v. Edward De Nevue, 45 La.Ann. 988, 13 So. 396, 397.

Since the notary has never actually resided in the Parish of St. Bernard and has never recorded any declaration of change of domicile in the Parish of Orleans, the conclusion is inescapable that his domicile remains in the Parish of Orleans.

For the reasons assigned, the judgment of the trial court is affirmed at appellant's cost.